| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:09CR54JCH(MLM) |
| | ) | |
| THOMAS JAMES WARNER, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court on defendant's Motion to Dismiss Counts I and II of the Indictment [Doc. 13], Motion for Disclosure of Expert Testimony [Doc. 14], Motion for Notice of Intent to Use 404(b) Evidence and for Hearing on Admissibility of 404(b) Evidence [Doc. 15], Motion to Sever Defendants [Doc. 16] and Motion to Suppress Physical Evidence [Doc. 17]. An Evidentiary Hearing was scheduled on 3/12/09. At the time of the Hearing the parties agreed that all of the issues raised in defendant's Motions were matters of law and no testimony would be required.

1.     **Motion to Dismiss Counts I and II [Doc. 13]**

Defendant is charged by Indictment in Count I with Conspiracy to Manufacture More than 50 Grams of a Mixture or Substance Containing Methamphetamine in violation of 21 U.S.C. § 841(b)(1)(B)(viii) and 846. In Count II he is charged with Possession of Pseudoephedrine with the Intent to Manufacture Methamphetamine in violation of 21 U.S.C. § 841(c)(1). There is an additional Count, Count III, in which the co-defendant, Kenneth Dodge, is charged with Possession of Pseudoephedrine with the Intent to Manufacture Methamphetamine in violation of 21 U.S.C. § 841(c)(1). Defendant moves to dismiss Counts I and II on the ground that they are defective as a matter of law in that they

fail to allege essential facts constituting the offenses charged as required by Fed.R.Crim.P. 7(c)(1).

To be legally sufficient on its face, the indictment must contain all the essential elements of the offenses charged, it must fairly inform the defendant of the charges against which the defendant must defend, and it must allege sufficient information to allow the defendant to plead a conviction or an acquittal as a bar to a subsequent prosecution. United States Const. Amends. V and VI; Fed.R.Crim.P. 7(c); <u>Hamling v. United States</u>, 418 U.S. 87, 117 (1974); <u>United States v. Just</u>, 74 F.3d 902, 903-04 (8th Cir. 1996); <u>United States v. Wessels</u>, 12 F.3d 746, 750 (8th Cir. 1993), <u>cert. denied</u>, 513 U.S. 831, (1994); <u>United States v. Young</u>, 618 F.2d 1281, 1286 (8th Cir.), <u>cert. denied</u>, 449 U.S. 844 (1980). The offense of conspiracy to manufacture more than 50 grams of a mixture or substance containing a detectable amount of methamphetamine contains four essential elements: (1) that two or more persons reached an agreement or came to an understanding to manufacture a controlled substance, that is, a mixture or substance containing methamphetamine; (2) that defendant voluntarily and intentionally joined in the agreement or understanding, either at the time it was first reached or at some later time while it was still in effect; (3) that at the time the defendant joined in the agreement or understanding, he knew the purpose of the agreement or understanding; and (4) the quantity of a mixture or substance containing methamphetamine is in excess of 50 grams. <u>United States v. Johnson</u>, 225 F. Supp.2d 1009, 1018 (N.D. Iowa 2002). The essential elements of possession of pseudoephedrine with the intent to manufacture methamphetamine are: (1) that the defendant knowingly and willfully possessed pseudoephedrine; (2) that he did so with the intent to manufacture methamphetamine. <u>United States v. Beltz</u>, 385 F.3d 1158, 1162 (8th Cir. 2004). Counts I and II of the Indictment allege all of the essential elements of the crimes charged. In addition, Counts

I and II specify the approximate dates of the alleged offenses and, as to Count I, the factual basis for the charges brought, all of which allow the defendant to prepare a defense including one of double jeopardy. Fed.R.Crim.P. 7(c); <u>Mallen</u>, 843 F.2d at 1102.

This indictment is a plain, concise and definite statement of the essential facts constituting the offenses charged and complies in all respects with Rule 7 of the Federal Rules of Criminal Procedure. It tracks the language of the statutes and places the defendant on notice of the nature and extent of the charges in order to protect him from double jeopardy. <u>See</u> <u>Hamling</u>, 418 U.S. at 117; <u>Young</u>, 618 F.2d at 1286.

**2.** **Motion for the Disclosure of Expert Testimony [Doc. 14]**
**and**
**3.** **Motion for Notice of Intent to Use 404(b) Evidence and for Hearing on Admissibility of 404(b) Evidence [Doc. 15]**

The court notes that these Motions are not in compliance with the court's Order Concerning Pretrial Motions which requires that all disclosure and discovery matters be filed and docketed as a "request" not a "motion." The government's Response indicates that in accordance with Federal Rule of Criminal Procedure 16 and Federal Rule of Evidence 702, 703 and 705, the government will provide reasonable notice in advance of trial of the general nature of any such evidence it intends to introduce at trial. In court, the government stated that its only experts would be the criminalist who performed the drug analysis and Detective Jason Grellner.

The government's Response indicates that it will, in accordance with Rule 404(b) provide reasonable notice, at least 10 days, in advance of trial, the general nature of any such evidence it intends to introduce at trial. In court, the government stated that to date it is unaware of any 404(b) evidence. These two Motions should be denied as moot.

**4.** **Defendant's Motion to Sever Defendants [Doc. 16]**

Defendant moves to sever his case from the case of co-defendant Kenneth Dodge because of the severe prejudice to defendant Warner if the two are tried together. Defendant states they will have mutually antagonistic defenses and that there could be a problem if co-defendant Dodge testifies and defendant Warner does not.

In determining whether a defendant is entitled to a separate trial, the court must decide whether joinder was proper under Rule 8 and whether joinder is likely to have a "substantial and injurious effect or influence in determining the jury's verdict." <u>United States v. Lane</u>, 474 U.S. 438, 449 (1986), <u>quoting</u> <u>Kotteakos v. United States</u>, 328 U.S. 750, 776 (1946).

Joinder under Rule 8(b) requires that there be a factual interrelationship among all the joined defendants and counts. <u>E.g.</u>, <u>United States v. Bledsoe</u>, 674 F.2d 647, 656-57 (8th Cir.), <u>cert. denied</u>, 459 U.S. 1040 (1982). In determining before trial whether or not joinder was proper, the court must see whether this factual interrelationship is alleged in the indictment. <u>Id.</u> at 655; <u>United States v. Andrade</u>, 788 F.2d 521, 529 (8th Cir.), <u>cert. denied</u>, 479 U.S. 963 (1986); <u>see</u> <u>also</u> <u>United States v. Jones</u>, 880 F.2d 55, 62-63 (8th Cir. 1989). In this case it is clear that the actions of the defendants are factually interrelated. Both defendants are charged in Count I with conspiracy. It is not necessary that all defendants be charged in all counts. <u>United States v. Jones</u>, 880 F.2d 55,62 (8th Cir. 1989). In this case defendant Warner does not allege that he and co-defendant Dodge were misjoined.

"When defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants." <u>Zafiro v. United States</u>, 506 U.S. 534, 539 (1993). "There is a preference in the federal system for joint trials of defendants who are indicted together." <u>Zafiro</u>, 506 U.S. at 537; <u>United States v. Shivers</u>, 66 F.3d 938, 939 (8th Cir.), <u>cert. denied</u>, 516 U.S. 1016 (1995). Joint trials are favored because they

"conserve state funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial." <u>United States v. Lane</u>, 474 U.S. at 449, <u>quoting</u> <u>Bruton v. United States</u>, 391 U.S. 123, 134 (1968); <u>United States v. Cadwell</u>, 864 F.2d 71, 73-74 (8th Cir. 1988). The court must look to the defendant's showing that prejudice would result from joinder and consider whether such prejudice can be avoided at trial. Very often relevant factors cannot be fully evaluated until during trial, <u>e.g.</u>, the effect of limiting instructions, the strength of the government's evidence, the receipt of evidence not relevant to all defendants on all counts, and the number of defendants tried jointly. <u>United States v. Sazenski</u>, 833 F.2d 741, 745-46 (8th Cir. 1987), <u>cert. denied</u>, 485 U.S. 906 (1988).

"Rarely, if ever will it be improper for co-conspirators to be tried together." <u>United States v. Stephenson</u>, 924 F.2d 753, 761 (8th Cir.), <u>cert. denied</u>, 112 S.Ct. 63 (1991); <u>United States v. Drew</u>, 894 F.2d 965, 968 (8th Cir.), <u>cert. denied</u>, 494 U.S. 1089 (1990). "It is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." <u>Zafiro</u>, 506 U.S. at 540. <u>See also</u> <u>Layton v. South Dakota</u>, 918 F.2d 739, 744 (8th Cir. 1990), <u>cert. denied</u>, 499 U.S. 953 (1991). Likewise, severance is not required: If the evidence against a co-defendant is more damaging, <u>United States v. Pou</u>, 953 F.2d 363, 369 (8th Cir.), <u>cert. denied</u>, 112 S.Ct. 1982 (1992); if the defendant's role in the conspiracy is minor, <u>United States v. Pecina</u>, 956 F.2d 186, 188 (1992); or if all of the evidence will not be admissible against all co-defendants, <u>United States v. Sparks</u>, 949 F.2d 1023, 1027 (8th Cir. 1991), <u>cert. denied</u>, 112 S.Ct. 1987 (1992).

"The mere fact that there is hostility among the defendants or one defendant may try to save himself at the expense of another is not sufficient grounds to require separate trials." <u>United States v. Garret</u>, 961 F.2d 743, 746 (8th Cir. 1992). "Mutually antagonistic defenses are not prejudicial <u>per se</u>." <u>Zafiro</u>, 506 U.S. at 538.

Anticipated exculpatory testimony of a co-defendant does not automatically require severance.  United States v. Foote, 920 F.2d 1395, 1400 (8th Cir. 1990), cert. denied, 111 S.Ct. 2246 (1991).  "Severance is not mandated simply because a co-defendant might testify and thereby only 'increase the chances of acquittal or tend to rebut some aspect of the government's case.'  Exculpation is required."  Foote, 920 F.2d at 1400 (quoting United States v. Reed, 733 F.2d 492, 508 (8th Cir. 1984)).

A joint trial would not deprive defendant of his right to ten peremptory jury challenges.  Defendant has no such unqualified right.  Rule 24(b) of the Federal Rules of Criminal Procedure states that "the defendant or defendants jointly [are entitled] to ten peremptory challenges."  (emphasis added)  In addition, the evidence in this case is not complex or confusing such that the jury will be unable to make a determination about the separate guilt of each defendant.

Severance is not required on the ground that the testimony of a co-defendant at trial would compel defendant to testify or to suffer prejudice as a result of a decision not to testify.  An instruction cautioning the jury against drawing any adverse inference from his election not to testify will protect the defendant from any prejudice anticipated by the co-defendant's testimony.  In addition, no comment concerning the failure of any defendant to testify is permitted.

Some factors will require pretrial severance.  If the government intends to offer a confession against one defendant which incriminates a co-defendant, the co-defendant is entitled to a separate trial to avoid the prejudice of not being able to cross-examine the declarant.  Bruton, 391 U.S. at 136.  However, such prejudice may be avoided by the redaction from the confession of any reference to the co-defendant.  United States v. Kaminski, 692 F.2d 505, 522 (8th Cir. 1982).

The Supreme Court held in <u>Bruton v. United States</u>, 391 U.S. 123 (1968), that in a trial where two or more defendants are tried jointly, the admission of a non-testifying co-defendant's confession that expressly implicates the defendant violates the defendant's Sixth Amendment confrontation rights, even if the district court gave the jury limiting instructions to consider the confession only against the co-defendant who confessed. <u>Id.</u> at 126; <u>United States v. Melina</u>, 101 F.3d 567 (8th Cir. 1996); <u>United States v. Escobar</u>, 50 F.3d 1414, 1422 (8th Cir. 1995). "If a co-defendant's confession does not incriminate the defendant on its face, but does so only when linked to additional evidence, it may be admitted if a limiting instruction is given to the jury and the defendant's name is redacted from the confession. <u>United States v. Flaherty</u>, 76 F.3d 967, 972 (citing <u>Richardson v. Marsh</u>, 481 U.S. 200, 211 (1987)). In addition, <u>Bruton</u> does not apply at all when a co-defendant's statements do not incriminate the defendant either on their face or when considered with other evidence. <u>Escobar</u>, 50 F.3d at 1422. In the present case the court is unaware of any out of court statements by either defendant.

In the present case the weight of the Eighth Circuit authority dictates that the Motion for Severance should be denied.

5.    **Motion to Suppress Physical Evidence [Doc. 17]**

The government's Response proffered the following facts:

On January 25, 2008 members of the Jefferson's County Sheriff's Department's Municipal Enforcement Group received an anonymous drug tip regarding a possible methamphetamine lab being located at co-defendant, Kenneth Dodge's residence at 1966 Linheart Drive in Festus, Missouri. Upon arrival at the residence officers detected a chemical odor emitting from the area. While walking towards the back door of the residence the officers observed, sitting at the end of the driveway: two (2) separate 50 ounce Arm & Hammer containers with an unknown liquid, one (1) 150 ounce Purex container with an unknown liquid, one (1) 3 liter soda bottle containing an unknown liquid.

Upon further inspection, the officers also observed an old burn pile at the end of the driveway. Located in that pile were: eight (8) empty 11 ounce Punch

starter fluid cans, two (2) empty one gallon container of camp fuel, five (5) empty 12 ounce bottles of Heet and several empty pill blister packs. Officers then responded to the rear door of the residence in order to make contact with the occupants, and knocked on the door identifying themselves as law enforcement. While standing at the door officers could hear individuals moving around inside, but no one responded to the door. Officers began to knock again, while once again identifying themselves as law enforcement, to no avail.

While knocking on the door, officers detected a chemical odor coming from inside of the residence. Detective Steve Bergner looked through the glass and observed items consistent with the manufacture of methamphetamine sitting in plain view. Following, due to exigent circumstances and having received no reply from inside the residence to the several knocks on the door, officers forced entry through the side door of the residence. Upon entering the residence the chemical odor became stronger, and the residence was cleared for safety.

While clearing the residence the officers observed defendant Thomas Warner in the corner of the master bedroom along with a Rottweiler dog sitting next to his side. Defendant Warner resisted arrest but was ultimately handcuffed by officers while in the bedroom. Following, co-defendant Dodge was found hiding under the bed in the same master bedroom. After resisting arrest co-defendant Dodge ultimately complied. Detective Steven Bergner requested consent to search the residence from co-defendant Kenneth Dodge, and verbal consent was given to Detective Bergner by co-defendant Dodge.

During a search of the residence officers observed [next follows a long list of items consistent with the manufacture of methamphetamine].

If this case proceeded to trial, the government would present expert testimony that each of the items found at the residence located at 1966 Linheart Drive in Festus, Missouri in the presence of both defendants is used in the manufacture of methamphetamine.

Officers will testify that during the course of this investigation, they analyzed pseudoephedrine logs maintained by local pharmacies pursuant to Missouri state law. These records revealed that between July 7, 2006 and October 23, 2008, defendant Thomas Warner purchased pseudoephedrine on at least 45 separate occasions totaling approximately 116 grams of pseudoephedrine. In some instances, defendant Warner made multiple purchases of pseudoephedrine during the same month.

A defendant has standing to challenge the admissibility of evidence only if his own constitutional rights have been violated. United States v. Padilla, 508 U.S. 77, 81 (1993); United States v. Salvucci, 448 U.S. 83, 86-87 (1980); Rakas v. Illinois, 439 U.S. 128, 134

(1978). In cases involving Fourth Amendment violations, courts determine standing by determining whether defendant had a reasonable expectation of privacy in the area searched or the items seized. The Supreme Court has adopted a two-part test to determine whether a person's expectation of privacy is legitimate: First, the person must exhibit an actual subjective expectation of privacy, and second, society must be prepared to recognize that expectation as objectively reasonable. <u>Katz v. United States</u>, 389 U.S. 347, 361 (1967).

As pointed out in <u>United States v. Sanchez</u>, 943 F.2d 110, 113 n.1 (1st Cir. 1991), the use of the word "standing" is convenient but somewhat imprecise. The Supreme Court has indicated in <u>Rakas v. Illinois</u>, 439 U.S. 128 (1978), that matters of standing in the context of searches and seizures actually involve substantive Fourth Amendment law. <u>See also</u> <u>Minnesota v. Carter</u>, 525 U.S. 83, 119 S.Ct. 469, 472 (1998) ("in determining whether a defendant is able to show a violation of his (and not someone else's) Fourth Amendment rights, the 'definition of those rights is more properly placed within the purview of substantive Fourth Amendment law than within that of standing.'" <u>quoting</u> <u>Rakas</u>.) Standing is not to be analyzed apart from the merits, rather a defendant is required to prove a legitimate expectation of privacy as a prerequisite to challenge unlawful police conduct. <u>Sanchez</u>, 943 F.2d at 113 n.1.

In this case, defendant Warner lacks standing to challenge the search. Fourth Amendment rights may not be asserted vicariously and thus it must be determined whether the defendant had a legitimate expectation of privacy in the area searched. <u>United States v. Gomez</u>, 16 F.3d 254, 256 (8th Cir. 1994), <u>citing</u> <u>Rakas v. Illinois</u>, 439 U.S. 128, 138-44 (1978). The defendant has the burden of proof on the issue of his reasonable expectation of privacy. <u>United States v. Kiser</u>, 948 F.2d 418, 423 (8th Cir. 1991), <u>cert. denied</u>, 112 S.Ct. 1666 (1992). If a defendant cannot prove a sufficiently close connection to the object or

place searched, he has no standing to claim the search was illegal. <u>United States v. Sanchez</u>, 943 F.2d 110, 113 (1st Cir. 1991).

The defendant has no standing in this case to raise the suppression argument presented in his Motion because the United States Supreme Court in <u>Minnesota v. Carter</u>, 525 U.S. 83 (1998) held that defendants who are transient guests at a residence have no legitimate expectation of privacy and thus any search which may have occurred did not violate their Fourth Amendment rights.

Defendant concedes that defendant was present because he was visiting co-defendant Dodge. Defendant acknowledges that mandatory authority from the United States Supreme Court indicates that a temporary guest does not have a legitimate expectation of privacy at another's place of abode. He further acknowledges that any illegal search that occurred did not violate a temporary guest's Fourth Amendment rights, <u>citing</u> <u>Minnesota v. Carter</u> ("An overnight guest in a home may claim the protection of the Fourth Amendment but one who is merely present with the consent of the householder may not.") Defendant acknowledges that the court is constrained to follow this mandatory authority. However, defendant Warner states that he wishes to advance a good faith argument for a change in law based on the United States Supreme Court's decision in <u>Brendlin v.</u> <u>California</u>, 551 U.S. 249 (2007). In <u>Brendlin</u>, the Supreme Court held that a passenger in a vehicle was entitled to challenge the legitimacy of a traffic stop because the passenger had been seized within the meaning of the Fourth Amendment. Defendant states that much of the court's rationale in <u>Brendlin</u> can readily be applied to the instant situation.

The court acknowledges that defendant has raised the argument and has preserved it for review. Nevertheless, the Motion to Suppress should be denied because defendant lacks standing to raise the illegality of the search. <u>Minnesota v. Carter</u>, 525 U.S. 83, 90 (1998).

Accordingly,

**IT IS HEREBY RECOMMENDED** that defendant's Motion to Dismiss Counts I and II of the Indictment be **DENIED**. [Doc. 13]

**IT IS FURTHER RECOMMENDED** that defendant's Motion for Disclosure of Expert of Testimony be **DENIED** as moot. [Doc. 14]

**IT IS FURTHER RECOMMENDED** that defendant's Motion for Notice of Intent to use 404(b) evidence and for Hearing on Admissibility of 404(b) Evidence be **DENIED** as moot. [Doc. 15]

**IT IS FURTHER RECOMMENDED** that defendant's Motion to Sever Defendants be **DENIED**. [Doc. 16]

**IT IS FURTHER RECOMMENDED** that defendant's Motion to Suppress Physical Evidence be **DENIED**. [Doc. 17]

**IT IS HEREBY ORDERED** that Trial in this case has been set on **May 11, 2009** at **9:00 A.M.** before the Honorable Jean C. Hamilton.


The parties are advised that they have eleven (11) days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).


/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE


Dated this ___19th___ day of March, 2009.